# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00233-CV

**Steven B. Aubrey, Individually, and as Beneficiary of, on behalf of, and for the benefit of the Aubrey Family Trust, Appellant**

**v.**

**United Heritage Credit Union and Wilford P. Schroeder, Jr., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-16-000984, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Steven B. Aubrey, acting pro se, appeals from the trial court's order granting the plea to the jurisdiction of appellees United Heritage Credit Union and Wilford P. Schroeder Jr. For the following reasons, we affirm.

## BACKGROUND[1]

Pursuant to the will of Richard Buck Aubrey Sr., who died in 2004, a Family Trust was created. Under the terms of the will, Steven B. Aubrey's mother, Betsy Aubrey (Ms. Aubrey), is the sole beneficiary and trustee of the Family Trust; she is entitled to distributions of income and principal from the Family Trust, including distributions from principal for her "health, support, and

---

[1] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

maintenance"; and the Family Trust terminates on her death, at which point any remaining assets are to be distributed to Aubrey Sr.'s "then living descendants, per stirpes."

In 2012, United Heritage leased real property from the Family Trust. The lease contained an option to purchase, and United Heritage exercised the option in April 2013. Before title to the property was conveyed to United Heritage, it was conveyed from the Family Trust to Ms. Aubrey and then to one of Aubrey's brothers. Alleging harm to the trust from the sale of the property, Aubrey sued United Heritage, its president Schroeder, Ms. Aubrey, and his brothers. Aubrey claimed that the property "was illegally stripped from the Trust" and that the proceeds of the sale should have been conveyed to the Family Trust. According to Aubrey, the Trust did not receive any of the proceeds from the sale, and United Heritage and Schroeder conspired with Ms. Aubrey, as trustee, and one of his brothers to deprive the Family Trust of the sale proceeds. Aubrey's pleaded causes of action included trespass to try title, fraudulent transfer, fraudulent lien or claim, fraud, tortious interference with inheritance rights, conversion, money had and received, unjust enrichment/quantum meruit, civil conspiracy, negligence, gross negligence, breach of trust, and breach of fiduciary duty.

United Heritage and Schroeder answered and filed a plea to the jurisdiction, arguing that Aubrey lacked standing to bring claims against them under a contract to which he was not a party or for alleged damage to a trust of which he was not a beneficiary. Attached to their plea was a copy of Aubrey Sr.'s will. In addition to appointing Ms. Aubrey the trustee, Aubrey Sr. granted her, as the trustee, broad powers, including "all powers granted to trustees by the common law or applicable statutes" and the power,

2

To sell, exchange, give options upon, partition, convey, or otherwise dispose of, with or without covenants (including covenants of warranty of title), any property which may from time to time be or become a part of the Trust estate, at public or private sale or otherwise, for cash or other consideration, or on credit, and upon such terms and conditions as the Trustee shall think advisable, and to transfer and convey the same free of all Trusts.

Aubrey filed a response to the plea to the jurisdiction with evidence, including the affidavit of Schroeder from a separate case. In the affidavit, Schroeder described the real estate transaction in relevant part as follows:

3. In 2012, [United Heritage] leased real property in Travis County, Texas from the Aubrey Family Trust. *See* Lease Agreement attached hereto as Exhibit A. The lease contained an option to purchase the leased property.

4. [United Heritage] exercised the option in April, 2013. Shortly thereafter, [United Heritage] received a title commitment for the property. *See* Ex. B. The commitment disclosed that the property was titled in [Aubrey Sr.]'s name. [Aubrey Sr.] is apparently the deceased settlor of the Aubrey Family Trust.

5. The Aubrey Family Trust advised the title defect would be addressed with corrective deeds prior to the closing and that it would convey title to the property to [United Heritage] at closing. [United Heritage] accepted the Trust's representation in good faith and closed on the purchase of the property for $300,000.00 pursuant to the lease.

6. [United Heritage] did not "unlawfully purchase" the property. [United Heritage] was not aware the Aubrey Family Trust received "no consideration." [United Heritage] did not conspire with [Aubrey's brother]. [United Heritage] did not inquire or participate in the corrective transfers from the Aubrey Family Trust to Ms. Betsy Aubrey to [Aubrey's brother] that apparently predated [United Heritage]'s purchase.

7. [United Heritage] paid fair value for the property and accepted the title in exchange for the agreed-upon consideration. Gracy Title provided [United Heritage] with a title policy insuring the title it acquired.

3

After a hearing, the trial court granted the plea to the jurisdiction and dismissed Aubrey's claims against United Heritage and Schroeder with prejudice. The trial court then severed Aubrey's claims against United Heritage and Schroeder from his claims against family members and transferred the severed claims into a separate cause number. This appeal from the severed cause followed.

## ANALYSIS

In one issue, Aubrey argues that the trial court erred in granting the plea to the jurisdiction because he has standing to redress damages caused to the Family Trust and its assets by the sale of the property to United Heritage.[2]

### Standard of Review

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction." *Heckman*, 369 S.W.3d at 150. When assessing a plea to the jurisdiction,

---

[2] In the section of his brief titled "Issues Presented," Aubrey references the trial court's severance of his claims against United Heritage and Schroeder. To the extent he is challenging the trial court's severance order, we conclude that he has waived it by inadequate briefing. *See* Tex. R. App. P. 38.1(i) (requiring "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.) ("A *pro se* litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure." (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978))).

4

we focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff. *Id.* "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

Subject matter jurisdiction requires a plaintiff bringing suit to have standing to do so. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993); *see Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000) (noting that standing is component of subject matter jurisdiction). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005); *see In the Interest of B.I.V.*, 923 S.W.2d 573, 574 (Tex. 1996) (per curiam) ("To establish standing, a person must show a personal stake in the controversy."); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied) (observing that, among other requirements, standing requires "'injury in fact,' an invasion of a legally protected interest that is concrete and particularized, and that is actual or imminent rather than conjectural or hypothetical" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992))). A court has no jurisdiction over a claim made by a plaintiff who lacks standing and, as such, must dismiss it. *Heckman*, 369 S.W.3d at 150–51.

**Aubrey's Standing**

To support his standing to pursue claims against United Heritage and Schroeder, Aubrey describes his interest in the property as a "vested property interest" and his interest in the trust as "a named secondary beneficiary" and "a statutory devisee." Aubrey also asserts a "derivative" right as a "beneficiary" of the trust to sue United Heritage and Schroeder "because the Trustee refused to act" as to the "outright theft of property" from the Family Trust. *See In re XTO Energy, Inc.*, 471 S.W.3d 126, 131–32 (Tex. App.—Dallas 2015, no pet.) (setting out standard for determining when trust beneficiary may bring cause of action that trustee has against third party because trustee cannot or will not do so). Aubrey argues that Ms. Aubrey, United Heritage, and Schroeder "engaged in three illegal land flipping transactions to effect the waste of an asset in the Trust" and that Ms. Aubrey was not going to sue herself "for fraud or her co-conspirators that assisted in this illegal scheme."

Under the terms of Aubrey Sr.'s will, however, Ms. Aubrey is the sole beneficiary of the Family Trust, as well as the trustee with the power to "sell, exchange, give options upon, partition, convey, or dispose of . . . any [trust] property . . . upon such terms and conditions as [she thinks] advisable" and to distribute to herself income and principal. Further, the terms of the will provide that the Family Trust terminates on Ms. Aubrey's death and, only at that point, are any remaining assets in the Family Trust distributed to Aubrey Sr.'s "then living descendants, per stirpes." Under the will's express terms then, it was unknown who would receive the remaining assets, if any, in the Family Trust at the time of the sale of the property, and it will continue to be unknown until Ms. Aubrey's death. Although Aubrey may receive assets from the Family Trust at

some undetermined time in the future, he will do so only if two contingencies are satisfied at the time of Ms. Aubrey's death: (1) he is alive, and (2) assets remain in the Family Trust. The undisputed evidence also showed that Aubrey was not a party to the lease or sale of the property to United Heritage and that United Heritage "paid fair value for the property and accepted the title in exchange for the agreed-upon consideration."

Considering the express terms of Aubrey Sr.'s will and the undisputed facts, we conclude that Aubrey has not shown an interest in the Family Trust or its assets that would demonstrate his standing to bring the claims that he has asserted against United Heritage or Schroeder for alleged damage to the trust arising from the sale of the property. *See Heckman*, 369 S.W.3d at 150 (noting that burden is on plaintiff to affirmatively demonstrate trial court's jurisdiction); *Lovato*, 171 S.W.3d at 848 (requiring party to have "sufficient relationship with the lawsuit so as to have a 'justiciable interest' in the outcome"); *Save Our Springs Alliance*, 304 S.W.3d at 878 (requiring "'injury in fact'"); *see also Davis v. First Nat'l Bank of Waco*, 161 S.W.2d 467, 472 (Tex. 1942) ("An expectant heir has no present interest or right in property that he may subsequently inherit and consequently he cannot maintain a suit for the enforcement or adjudication of a right in the property."); *Moon v. Lesikar*, 230 S.W.3d 800, 802–06 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (affirming trial court's ruling that plaintiff, who was "contingent beneficiary" of family trust and brought claims based on trust's sale of "Airport Stock" at "inadequate price," "lacked standing to complain about the sale of Airport Stock because she had no interest in it at the time of the sale"); *Campbell v. Automobile Ins. Co. of Hartford Conn.*, No. 07-06-00158-CV, 2007 WL 1390625, at *1, 3 (Tex. App.—Amarillo May 9, 2007, no pet.)

(mem. op.) (concluding that plaintiffs who were beneficiaries of trust did not have standing to sue insurance company where named insured under insurance policy was trust and observing that plaintiffs were "strangers to the insurance contract, not in a legal position to recover any interest in the policy proceeds"); *Cote v. Bank One, Texas, N.A.*, No. 4:03-CV-296-A, 2003 WL 23194260, at *4–6 (N.D. Tex. Aug. 1, 2003) (observing that Texas law was clear that potential beneficiary of trust assets did not have standing to pursue claims against accountants with regard to accountants' involvement with trust); *Davis v. Davis*, 734 S.W.2d 707, 709–10 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (concluding that appellant "did not have standing to sue based on his claim that he is a potential beneficiary of trust assets" and explaining that "[o]ne cannot maintain a suit for the enforcement or adjudication of a right in property that he expects to inherit, because he has no present right or interest in the property").

Further, to the extent that Aubrey relies on statutory definitions of such terms as "beneficiary" and "interested person," and various causes of action permitted by the Texas Property Code, we conclude that the cited statutes do not support his standing to assert claims against United Heritage and Schroeder for alleged damage to the trust or its assets from the sale of the property. *See* Tex. Prop. Code §§ 111.004(2) ("'Beneficiary' means a person for whose benefit property is held in trust, regardless of the nature of the interest."), (7) ("'Interested person' means a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding."), 116.002(2) ("'Beneficiary'

8

includes, in the case of a decedent's estate, an heir, legatee, and devisee and, in the case of a trust, an income beneficiary and a remainder beneficiary."); *see also id.* §§ 111.004(6) (defining "interest"), 116.002(5) (defining "income beneficiary"), (11) (defining "remainder beneficiary"). We need go no further than to observe that Aubrey's cited statutory causes of action are directed to claims against or by the trustee of a trust, not the types of claims for damages that Aubrey seeks to bring against Schroeder and United Heritage, a third party purchaser of property for fair value. *See id.* §§ 114.001 (addressing liability of trustee to beneficiary), 116.004 (addressing trustee's fiduciary duties); *see also id.* § 115.001 (addressing jurisdiction over proceedings "by or against a trustee and all proceedings concerning trusts").[3]

Considering Aubrey's pleadings and the undisputed evidence relevant to the determination of his standing, we conclude that Aubrey has failed to affirmatively demonstrate the trial court's jurisdiction over his asserted claims against Heritage and Schroeder. *See Heckman*, 369 S.W.3d at 150. Thus, we conclude that the trial court did not err in granting the plea to the jurisdiction and overrule Aubrey's issue.

---

[3] For similar reasons, we also find misplaced Aubrey's reliance on *Snyder v. Cowell*, No. 08-01-00444-CV, 2003 Tex. App. LEXIS 3139, at *15, 17 (Tex. App.—El Paso Apr. 10, 2003, no pet.) (mem. op.) (stating that "general rule is that a remainder vests when there is a person in being who has an immediate right to possession of property upon termination of an intermediate estate with only the right of possession postponed" and observing that "[v]ested remaindermen are 'interested persons' under the Trust Code and can bring a cause of action for breach of fiduciary duty" against trustee), and his reliance on definitions in the Texas Estates Code, such as "legatee," "devisee," "distributee," and "interested person," *see* Tex. Est. Code §§ 22.009 ("'Devisee' includes a legatee.'"), .010 ("'Distributee' means a person who is entitled to a part of the estate of a decedent under a lawful will or the statutes of descent and distribution."), .018(1) ("'Interested person' or 'person interested' means: (1) an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered."), .021 ("'Legatee' includes a person who is entitled to a legacy under a will.").

9

## CONCLUSION

For these reasons, we affirm the trial court's order granting the plea to the jurisdiction of United Heritage and Schroeder.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed:   April 12, 2017